IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WAHLCOMETROFLEX, INC., <br> a Delaware corporation <br> 29 Lexington Street <br> Lewiston, Maine 04240 <br><br>                 Plaintiff, <br><br> v. <br><br> WESTAR ENERGY, INC., <br> a for profit Kansas corporation <br> Serve: Larry D. Irick <br>       Registered Agent <br>       818 Kansas Avenue <br>       Topeka, Kansas 66612 <br><br>                 Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 11-CV-4017-EFM/JPO <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff WahlcoMetroflex, Inc. ("Wahlco") for its Complaint against Defendant Westar Energy, Inc. ("Westar") states and alleges as follows:

### NATURE OF ACTION

1. This is a breach of contract action to recover $367,511.28 (principal amount) wrongfully withheld by Westar for certain materials and equipment provided by Wahlco to Westar pursuant to a contract entered into by and between Wahlco and Westar on or about December 22, 2006. Despite Wahlco's repeated demands for payment over the course of the last two plus years, the amount of $367,511.28 still remains due and owing Wahlco.

## PARTIES

2. WahlcoMetroflex, Inc. is a Delaware corporation with its principal place of business located at 29 Lexington Street, Lewiston, Maine 04240.

3. Westar Energy, Inc. is a for profit Kansas corporation with its principal place of business at 818 Kansas Avenue, Topeka, Kansas 66612. Westar Energy, Inc. can be served with service of process through its registered agent, Larry D. Irick, 818 Kansas Avenue, Topeka, Kansas 66612.

## JURISDICTION & VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and this civil action is between citizens of different states.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) because Westar Energy, Inc. is a corporation with its principle place of business in Topeka, Kansas.

6. The parties also agreed that "[a]ny and all suits for any breach of this Contract . . . shall be filed and maintained in any court of competent jurisdiction in Topeka, Kansas." (*See* December 22, 2006 "Contract" attached hereto as Exhibit 1, ¶ 27).

## GENERAL ALLEGATIONS

7. Wahlco is a world leading designer and manufacturer of diverters, dampers, and expansion joints with over fifty years experience, specializing in controlling and isolating gas flows and supplying related duct systems.

8. Wahlco's products are in service around the world in power plants, refineries, chemical plants, pulp and paper mills, steel mills, and incinerators.

## The Agreement between Wahlco and Westar

9. On or about December 22, 2006, Wahlco and Westar entered into the Contract, whereby Wahlco agreed to provide certain equipment, primarily consisting of dampers, louvers, and duct work (the "Equipment") for a project at the Jeffrey Energy Center in St. Mary's, Kansas. The project is commonly referred to as the Jeffrey Energy Center FGD Upgrade Project (the "Project"). (Ex. 1, p.1).

10. The Contract entered into by and between Wahlco and Westar was a lump sum contract whereby Wahlco agreed to provide the Equipment in exchange for payment in the amount of $6,014,000. (Ex. 1, ¶ 2).

11. There were six change orders on the Project resulting in an increase in the Contract amount to $6,229,185.50. (*See* Copies of Change Orders attached hereto as Exhibit 2).

12. The Contract involved the provision of the Equipment for three "units," identified as Unit 1, Unit 2, and Unit 3. (Ex. 1, ¶ 4(a)).

13. Under the Contract, Wahlco agreed to deliver the Equipment in accordance with the following schedule:

    a. Unit 1 by August 29, 2007;

    b. Unit 2 by July 29, 2008; and

    c. Unit 3 by March 16, 2008.

(Ex. 1, "Attachment 1").

14. The Project's substantial completion date for Unit 1 was July 1, 2008. (*See* Ex. 1, ¶ 4(a)).

15. The Contract did not include installation or field assembly of the Equipment by Wahlco. The installation and field assembly was to be completed by another contractor hired by Westar.

### Delivery of Wahlco's Equipment for Unit 1 of the Project

16. Wahlco was only one of many suppliers or vendors of materials and equipment to the Project.

17. The Equipment provided by Wahlco was to be designed and manufactured in accordance with the plans and specifications for the Project.

18. Upon information and belief, Westar retained the services of Burns & McDonnell ("B&M") to provide, among other things, engineering, design, planning, scheduling, and construction management services for the Project.

19. Prior to manufacturing the Equipment, Wahlco was required to prepare and send approval drawings to B&M for its review and approval.

20. On or about February 5, 2007, Wahlco sent the approval drawings for the Equipment to B&M.

21. On or about June 29, 2007, nearly five months after sending the approval drawings to B&M, Wahlco received final approval from B&M to proceed with manufacturing of the Equipment, including that for Unit 1.

22. The time required by B&M to approve the design of the Equipment caused delays in the manufacturing of the Equipment because Wahlco could not manufacture the Equipment without B&M's approval.

23. As such, on or about May 16, 2007, during the time when Wahlco and B&M were finalizing the design of the Equipment, Wahlco requested a one month extension of time from B&M for the delivery of the Equipment for Unit 1.

24. On May 17, 2007, Wahlco was informed by B&M, that B&M would consult with Westar regarding the request for an extension of time, but that any extension would only apply to the delivery of the "guillotine" dampers and that Wahlco needed to deliver the "double or tandem" louver dampers for Unit 1 on time, otherwise late delivery of the "double or tandem" louvers would affect the "general construction contract."

25. Wahlco delivered the double and tandem louver dampers for Unit 1 on time.

26. Wahlco delivered the guillotine dampers for Unit 1 on or about November 15, 2007.

27. No one from B&M or Westar contacted Wahlco before delivery of Unit 1 was completed indicating that the delivery of the guillotine dampers for Unit 1 was delaying or in any way impacting the construction or Project schedule.

### Field Assembly and Commissioning of Unit 1

28. Upon information and belief, the guillotine dampers for Unit 1, which were delivered by Wahlco on or about November 15, 2007, were placed in storage until March 2008, because the Project had not progressed to a point where Westar was ready to install the guillotine dampers for Unit 1.

29. No one from B&M or Westar communicated to Wahlco, at any time between November 15, 2007 and March of 2008 that the timing of the delivery of the guillotine dampers for Unit 1 had delayed or in any way impacted the construction or Project schedule.

KCP-4094695-1

30. Though there was an understanding that Wahlco might be involved in the oversight and commissioning of the Units for which Wahlco's Equipment was provided, no one from B&M or Westar made any contact with anyone at Wahlco between November 2007 and March 12, 2008, regarding scheduling a Wahlco representative for a site visit to Westar for the oversight of the field assembly and commissioning of the Equipment for Unit 1.

31. In March of 2008, having heard nothing from B&M or Westar regarding the installation of the guillotine dampers, Wahlco contacted B&M regarding the Project's status and Wahlco's potential involvement in the oversight and commissioning of the Equipment for Unit 1.

32. Following that communication, arrangements were made for a Wahlco representative to be on site from March 31 to April 2, 2008 (the "First Site Visit"), to oversee the field assembly and commissioning of Unit 1.

33. Prior to the First Site Visit, no one at B&M or Westar expressed to Wahlco that the timing of the delivery of the guillotine dampers for Unit 1 had delayed or in any way impacted the construction or Project schedule.

34. The field assembly and commissioning of Unit 1 was not completed during the First Site Visit, and a second site visit was scheduled.

35. The Wahlco representative made a second site visit from April 14 to April 23, 2008 (the "Second Site Visit"), to oversee the field assembly and commissioning of Unit 1.

36. Prior to the Second Site Visit, no one at B&M or Westar expressed to Wahlco that the timing of the delivery of the guillotine dampers for Unit 1 had delayed or in any way impacted the construction or Project schedule.

37. The field assembly and commissioning of Unit 1 was not completed during the Second Site Visit, and a third site visit was scheduled.

38. The Wahlco representative made a third site visit from April 28 to May 4, 2008 (the "Third Site Visit"), to oversee the field assembly and commissioning of Unit 1.

39. Prior to the Third Site Visit, no one at B&M or Westar expressed to Wahlco that the timing of the delivery of the guillotine dampers for Unit 1 had delayed or in any way impacted the construction or Project schedule.

40. After the Third Site Visit, Wahlco remained in contact with B&M to assist B&M with the completion of the field assembly and commissioning of Unit 1.

41. Prior to the completion of the field assembly and commissioning of Unit 1, no one at B&M or Westar expressed to Wahlco that the timing of the delivery of the guillotine dampers for Unit 1 had delayed or in any way impacted the construction or Project schedule.

### Payments to Wahlco

42. Wahlco completed delivery of all its Equipment on or about October 3, 2008.

43. Wahlco invoiced Westar for the Equipment and services it supplied to the Project and Wahlco expected to be paid by Westar in accordance with the terms of the Contract. (Ex. 1, ¶ 23).

44. Westar failed to pay Wahlco in accordance with the Contract and has wrongfully withheld $367,511.28, the Contract balance, due and owing Wahlco.

45. Westar did not provide any written notice or provide Wahlco with any written damage calculations, as prescribed by the Contract, prior to withholding the $367,511.28 rightfully due and owing Wahlco. (Ex. 1, "Attachment 1", Art. 2(A)(3)).

KCP-4094695-1

7

46. The first written explanation received by Wahlco from Westar regarding the alleged reasons for withholding the $367,511.28 was not received by Wahlco until February 13, 2009, more than a year after the delivery of the guillotine dampers for Unit 1.

47. In February 2009, nearly fifteen months after Wahlco delivered the Equipment for Unit 1, and nearly four months after the last of the Equipment was delivered to the Project, Westar claimed it was entitled to liquidated damages from Wahlco because of the late delivery of Wahlco's Equipment.

48. Westar has since acknowledged that the basis for their liquidated damages claim is limited to the late delivery of the guillotine dampers for Unit 1.

49. Upon information and belief, the late delivery of the guillotine dampers for Unit 1 did not impact the construction of the Project or cause any delay in the completion of the Project.

## COUNT I
### (Breach of Contract)

50. Wahlco hereby incorporates by reference paragraphs 1 through 49 of its Complaint as if fully set forth herein.

51. A valid contract exists between Wahlco and Westar for the supply of Equipment by Wahlco for the Project in exchange for payment from Westar.

52. Wahlco delivered the Equipment to the Project.

53. Wahlco has invoiced Westar for all of the Equipment.

54. Westar has failed and refused to pay Wahlco in full for the Equipment provided by Wahlco.

55. Westar's failure to pay the invoices submitted for the Equipment provided by Wahlco constitutes a material breach of the Contract.

56. Westar owes Wahlco the principal balance of $367,511.28 for the Equipment provided to the Project.

57. All relevant conditions precedent to establish Westar's obligation to pay Wahlco have been met or otherwise satisfied.

58. As a direct result of Westar's breach of the Contract, Wahlco has been damaged in the principal amount of $367,511.28, plus interest accruing at the applicable statutory rate.

WHEREFORE, on Count I, Wahlco respectfully requests that this Court enter judgment for Wahlco and against Westar in the principal amount of $367,511.28, plus interest at the statutory rate, costs, attorneys' fees, and any other relief that this Court deems just and proper.

## COUNT II
### (Violation of the Kansas Fairness in Private Construction Contract Act - K.S.A. § 16-1801)

59. Wahlco hereby incorporates by reference paragraphs 1 through 58 of its Complaint as if fully set forth herein.

60. Pursuant to K.S.A. § 16-1801 *et seq.*, Westar was required by law to make payments to Wahlco in accordance with the terms of the Contract.

61. Despite demand for payment from Wahlco, Westar unreasonably refused and failed to make payments to Wahlco in accordance with the terms of the Contract.

62. Because of Westar's unreasonable failure to pay Wahlco in accordance with the terms of the Contract, Westar is liable to Wahlco under K.S.A. § 16-1801 *et seq.* for the principal

amount of $367,511.28, interest on that amount at the rate of 1.5% per month, and the reasonable attorneys' fees incurred by Wahlco in the prosecution of this lawsuit.

WHEREFORE, on Count II, Wahlco respectfully requests that this Court enter judgment for Wahlco and against Westar in the principal amount of $367,511.28, plus interest at the statutory rate of 1.5% per month from the date of Westar's breach of the Contract, costs, attorneys' fees, and any other relief that this Court deems just and proper.

Respectfully submitted,

/s/ David M. Buffo
| William E. Corum | KS #17324 |
| David M. Buffo | KS #21399 |

HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone:   (816) 983-8000
Facsimile:   (816) 983-8080
E-mail: william.corum@huschblackwell.com
E-mail: david.buffo@huschblackwell.com

*Attorneys for Plaintiff WahlcoMetroflex, Inc.*